IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| LESLIE C. PELZER | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 07-CV-0038 |
| Defendants. | : | |

MEMORANDUM OPINION

TIMOTHY R. RICE                                                      February 17, 2011
U.S. MAGISTRATE JUDGE

      Plaintiff Leslie Pelzer seeks an award of $343,051.00 in attorneys' fees and $29,159.07 in costs as a prevailing party pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and Federal Rule of Civil Procedure 54(d)(1). Following a nine-day trial, a jury awarded Plaintiff $138,000 in damages from defendant Marvin Burton, a Philadelphia police officer, for his use of excessive force when he fatally shot Plaintiff's son, Raymond Pelzer, in violation of 42 U.S.C. § 1983. The jury also found Officer Burton had not committed assault or battery, and defendants Sylvester Johnson and the City of Philadelphia had not violated the law by failing to provide adequate training or policies regarding foot pursuits.

      For the following reasons, I will grant Pelzer's requests for attorneys' fees and costs, but I will reduce the fee award to reflect reasonable hourly rates and the limited nature of Pelzer's success. I also will reduce the costs to eliminate items that are not taxable under the law.

      Background

      On April 27, 2006, Burton shot and killed Pelzer, who had fled from police during an investigatory stop in West Philadelphia. See Pelzer v. City of Phila., No. 07-0038, 2011 WL

93054, at *1-3 (E.D. Pa. Jan. 11, 2011). Pelzer was unarmed at the time, and his encounter with Burton and the other officers was not precipitated by any violent, or otherwise serious, criminal behavior. Id.

In the wake of her son's death, Plaintiff sued Burton, former Police Commissioner Sylvester Johnson, and the City of Philadelphia, bringing the following claims: (i) excessive force, in violation of 42 U.S.C. § 1983, against Burton; (ii) battery, in violation of Pennsylvania law, against Burton; (iii) assault, in violation of Pennsylvania law, against Burton; (iv) failure to train, in violation of § 1983, against Johnson and the City; (v) deficient policies or customs, in violation of § 1983, against Johnson and the City; and (vi) claims for wrongful death and survival damages against all defendants. See Complaint at ¶¶ 35-60, Pelzer v. City of Phila., No. 07-0038 (E.D. Pa. Jan. 4, 2007) [hereinafter Complaint].

The claims against Johnson and the City were based on allegations that Philadelphia police officers did not receive adequate training on how to safely conduct foot pursuits of fleeing suspects, that the Philadelphia Police Department had not adopted adequate policies governing foot pursuits, and that these failures had caused Burton to use excessive force against Pelzer. See Pelzer v. City of Phila., 656 F. Supp. 2d 517, 532-38 (E.D. Pa. 2009) (Stengel, J.).

Defendants sought summary judgment, which was granted only as to the wrongful death and survival claims against Johnson and the City. See id. at 540. All other claims were tried before a jury, starting on October 1, 2010. See Minute Entry, ECF No. 86, Pelzer v. City of Phila., No. 07-0038 (E.D. Pa. Oct. 1, 2010). After hearing six days of witness testimony, argument by counsel, and instruction on the law, the jury deliberated for two-and-one-half days before returning its verdict. See Pelzer, 2011 WL 93054, at *7. The jury found Burton liable for

using excessive force, and awarded Plaintiff compensatory damages of $138,000. See Civil Judgment, Pelzer v. City of Phila., No. 07-0038 (E.D. Pa. Oct. 15, 2010) [hereinafter Judgment]. On all other claims -- including assault and battery against Burton, and the § 1983 claims against Johnson and the City -- the jury found in favor of Defendants. Id. No punitive damages were awarded.

Defendants correctly concede Plaintiff is a "prevailing party" entitled to an award of attorneys' fees. See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Attorneys' Fees at 5, Pelzer v. City of Phila., No. 07-0038 (E.D. Pa. Feb. 7, 2011) [hereinafter Fee Response]. In her fee petition, Plaintiff contends she is entitled to the full amount of fees incurred in connection with this action, even though the jury returned a defense verdict on four of the five claims it considered. See Plaintiff's Memorandum of Law in Support of Motion for Attorneys' Fees & Costs at 4-6, Pelzer v. City of Phila., No. 07-0038 (E.D. Pa. Nov. 22, 2010) [hereinafter Fee Petition]. Plaintiff argues all five claims had "common core facts and related legal theories," making them so intertwined that she could not have succeeded in her claim against Burton "without all of the evidence discovered and produced at trial." Id. at 4-5. She requests her attorneys be compensated at the following rates: $500 per hour for Mark B. Frost, $450 per hour for Gregg L. Zeff, and $350 per hour for Daniel Hartstein.[1]

Defendants object to Plaintiff's fee request, asserting: (1) the fees should be reduced by

---

[1] Plaintiff also seeks $2,286.00 for 76.2 hours of work performed by Nicole Hendrix, a law student and legal intern who assisted Plaintiff's attorneys. See Fee Petition at Ex. A. Defendants do not challenge that portion of Plaintiff's request. See Fee Response at 7 n.2. Accordingly, I will award Plaintiff that portion of her fee request in full. See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (fee award cannot be reduced based on factors not raised by opposing party).

eighty percent to reflect Plaintiff's limited success; (2) the hourly rates sought are unreasonable and should be reduced for each attorney; and (3) the hourly rates sought should be "blended" and reduced by an additional ten percent because certain tasks performed by counsel were akin to "junior associate," "paralegal," or "secretarial" work. See Fee Response at 7-20.

As to Plaintiff's Bill of Costs, Defendants articulate the following objections: (1) Plaintiff's limited success means she is not a "prevailing party" for purposes of Rule 54(d)(1); (2) Plaintiff is not entitled to costs associated with her unsuccessful claims; (3) the Bill of Costs is not adequately itemized or supported by documentation; (4) Rule 54(d)(1) does not permit taxation of parking, travel, lodging, other unspecified expense, investigatory costs, or expert fees. See Defendants' Objections to Plaintiff's Bill of Costs at ¶¶ 11-21, Pelzer v. City of Phila., No. 07-0038 (E.D. Pa. Feb. 4, 2011) [hereinafter BOC Objections].

I will address each of Defendants' objections.

II.     Discussion

    A.     Legal Standard

A prevailing party under 42 U.S.C. § 1983 is entitled to reasonable attorneys' fees and costs. See § 42 U.S.C. § 1988. "The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." Rode, 892 F.2d at 1183; see also Smith v. Phila. Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997). If that burden is met, the party opposing the fee petition must specify its challenges to the reasonableness of the fee. Id. Once objections are raised, I have broad discretion "to adjust the fee award in light of those objections." Id.; see also Dixon-Rollins v. Experian Info. Solutions, Inc., No. 09-0646, 2010 WL 3734547, at *1 (E.D. Pa. Sept. 23, 2010) (Savage, J.).

Reasonable attorneys' fees are determined by first calculating the "lodestar," or the number of hours expended multiplied by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Rode, 892 F.2d at 1183. To assess the reasonableness of the hourly rate requested, I must consider "prevailing market rates in the relevant community," as well as "the experience and skill of the prevailing party's attorneys." Id. (citing Blum v. Stenson, 465 U.S. 86, 895 (1984), and Student Pub. Interest Research Grp. v. AT&T Bell Labs., 842 F.2d 1436, 1447 (3d Cir. 1988)).

The lodestar is presumed to be reasonable, unless the party objecting to it demonstrates an adjustment is necessary. See Rode, 892 F.2d at 1183; see also Washington v. Phila. County Ct. of Com. Pl., 89 F.3d 1031, 1035 (3d Cir. 1996). I may adjust the lodestar downward to account for the degree of the prevailing party's success, as a fee award based on all hours claimed may be excessive where a party's success is limited "in comparison to the scope of the litigation as a whole." See Hensley, 461 U.S. at 436-37, 440; Washington, 89 F.3d at 1044. Such a reduction may be appropriate even if the unsuccessful claims were "interrelated [with the successful claims], non-frivolous, and raised in good faith." Hensley, 461 U.S. at 436. Where a plaintiff's success is limited, I may award "only that amount of fees that is reasonable in relation to the results obtained." Id. at 440. "[T]he most critical factor [in assessing reasonable attorneys' fees] is the degree of success obtained." Id. at 436.

B. <u>Hourly Rate</u>

Plaintiff supports the hourly rates sought for her attorneys with affidavits from other lawyers attesting that the rates are reasonable in light of the attorneys' skill and experience, and are in line with prevailing market rates. See Fee Petition at Exs. B, C, E. Defendants

5

characterize the affidavits as "conclusory," and challenge the hourly rate sought for each of the three attorneys.[2] See Fee Response at 13-18. Specifically, Defendants suggest I reduce Mr. Frost's hourly fee from $500 to $400, Mr. Zeff's from $450 to $300, and Mr. Hartstein's from $350 to $275. Id. at 13. Defendants' proposed fees are based on a schedule of hourly rates compiled by Community Legal Services of Philadelphia ("CLS"). See Cmty. Legal Servs. of Phila., Attorney Fees: Explanatory Notice to the Public (Apr. 1, 2006), http://www.clsphila.org/Content.aspx?id=206 (last visited Feb. 15, 2011) [hereinafter CLS Fee Schedule]; see also Maldonado v. Houstoun, 256 F.3d 181, 188 (3d Cir. 2001) (approving the use of the CLS fee schedule in determining reasonable hourly rates). As to Mr. Hartstein, Defendants further suggest his limited participation at trial justifies a reduction of his fee. See Fee Response at 17 n.4.

Mr. Frost's involvement in this case was primarily limited to the discovery process and ended in December 2008. See Fee Petition at Ex. A. Although his billing records demonstrate he conducted most, if not all, of the depositions in this matter, he had no involvement in preparing for, or litigating, dispositive motions or the trial. Id. The affidavit of Gerald J. Williams, Esq., offered in support of Mr. Frost's hourly rate, consists of six paragraphs, most of which are conclusory in nature. See id. at Ex. B. It fails to demonstrate the affiant is familiar with the level of complexity of this case, or with Mr. Frost's limited role in litigating it. Id. Therefore, Plaintiff has not met her burden of establishing Mr. Frost's stated hourly rate is reasonable, and I will reduce it to $400, which is consistent with the upper end of the CLS fee

---

[2]Defendants do not challenge as excessive any specific time entries or the total number of hours billed.

schedule's range for an attorney with Mr. Frost's experience.[3]  See Loesch v. City of Phila., No. 05-0578, 2008 WL 2557429, at *3 (E.D. Pa. June 25, 2008) (refusing to depart upward from the CLS fee schedule for an attorney who conducted depositions and participated in pretrial motions, but was not lead trial counsel); Becker v. ARCO Chem. Co., 15 F. Supp. 2d 621, 629-30 (E.D. Pa. 1998) (rejecting conclusory affidavits that failed to account for the nature or scope of work done by the attorney).

Mr. Zeff was lead counsel for Plaintiff through summary judgment, settlement negotiations, and at trial, and worked on this matter from its inception.  See Fee Petition at Ex. A. The affidavit of David Rudovsky, Esq., offered in support of Mr. Zeff's hourly rate, contains more information than that of Mr. Williams, but is still lacking in detail.  See id. at Ex. C.  For example, it summarily notes Mr. Rudovsky's familiarity with Mr. Zeff's prior civil rights cases, but provides no explanation of the basis for that familiarity.  Id.  Nevertheless, the CLS fee schedule fails to account for the complexity of this matter or the complications inherent in trying a civil rights claim involving the use of deadly force.  As such, I will adopt neither the stated hourly rate of $450, nor the $240-$300 range recommended by CLS for an attorney with Mr. Zeff's experience.  Instead, I conclude $400 is a reasonable hourly rate for Mr. Zeff, in light of his experience litigating civil rights cases, his skill as a trial attorney, and the nature of his work

---

[3] I offer no opinion on whether the CLS fee schedule, as opposed to some other measure, constitutes the benchmark for reasonable hourly rates.  Compare Melissa G. v. Sch. Dist. Of Phila., No. 06-5527, 2008 WL 160613, at *3 (E.D. Pa. Jan. 14, 2008) (crediting the CLS fee schedule), with Mitchell v. City of Phila., No. , 2010 WL 1370863, at *15 (E.D. Pa. Apr. 5, 2010) (disregarding the CLS fee schedule).  Rather, I reference the CLS rates only as one of many helpful guides.

as lead counsel for Plaintiff.[4]  See Becker, 15 F. Supp. 2d at 628 (appropriate rate is within court's discretion where petitioner adequately supports rate sought and opposing party raises sufficiently specific objections to it).

Finally, the billing records reveal Mr. Hartstein's involvement in this matter was limited until September 2009, one month before trial began.  See Fee Petition at Ex. A.  According to the docket, he never entered his appearance.  Although he was present for all of the trial, his participation was minimal.  The affidavit of Jeffrey Fritz, Esq., offered in support of Mr. Hartstein's hourly rate, does not account for the limited role Mr. Hartstein played in this case, nor does it specify the basis for Mr. Fritz's familiarity with Mr. Hartstein's prior matters.  See id. at Ex. E.  Accordingly, I conclude Plaintiff has not met her burden of establishing Mr. Hartstein's stated hourly rate is reasonable, and I will reduce it to $275, which is consistent with the lower end of the CLS fee schedule's range for an attorney with Mr. Hartstein's experience.  See Loesch, 2008 WL 2557429, at *3-*4 (approving rates at the bottom of the CLS fee schedule's range, or below it, for attorneys who played a limited role in preparing and trying a case).

    C.    Blended Rate

Defendants further argue the hourly rates should be reduced by ten percent to account for time spent by each attorney performing "non-lawyer" work.  See Fee Response at 18-20.  Defendants list eighteen time entries they suggest are "paralegal/secretarial tasks."  Id. at 19-20.

---

[4] In support of the hourly rates claimed for Mr. Zeff and Mr. Frost, Plaintiff also attaches a 2006 order from a federal court in New Jersey approving hourly rates of $350 for both attorneys. See Fee Petition at Ex. D.  The rates sought in Plaintiff's petition would constitute nearly twenty-nine-percent and forty-three-percent rate increases for Mr. Zeff and Mr. Frost, respectively.  A fourteen-percent rate increase, to which a rate of $400 amounts for both, is far more reasonable. See Dixon-Rollins, 2010 WL 3734547, at *2 (reviewing the reasonableness of an attorney's stated rate increase over time).

Although trial courts have, on occasion, adopted the type of blended rate proposed by Defendants, see, e.g., Becker, 15 F. Supp. 2d at 632 (a court "may" examine whether more junior associates or non-lawyers could have performed certain tasks in a competent manner), doing so here would ignore the realities of practicing law as a solo practitioner or in a small firm with limited resources and manpower.

Furthermore, the examples cited by Defendants total only 3.25 hours -- a fraction of the 639.85 hours billed by Plaintiff's attorneys and included in the fee petition. See Fee Response at 19-20; Fee Petition at Ex. A. Although Defendants summarily assert the eighteen entries they reference are "only a small fraction of the type of paralegal/secretarial tasks" included in the fee petition, they fail to challenge any other specific entries. See Fee Response at 20 n.5. Moreover, the entries Defendants do list include time spent speaking directly with Plaintiff and drafting letters to other attorneys involved in the litigation. See id. at 19-20. Such tasks are not, on their face, work a lawyer would delegate to a non-lawyer. Defendants have not put forth evidence -- for example, copies of the letters showing the routine nature of their contents -- demonstrating these tasks, as they were performed, did not constitute work of an attorney. Accordingly, I will exercise my discretion and deny Defendants' request for a reduction in Plaintiff's fee award on this basis.

    D.    Partial Success

Plaintiff seeks a full award of fees, arguing all of her claims were interrelated, and stating she "could not have had better success" than the $138,000 in compensatory damages awarded by the jury on her successful claim against Burton. See Fee Petition at 3-5. Defendants contend Plaintiff's claim against Burton was "separate and distinct from" her claims against the other

defendants, "a majority of the evidence submitted at trial and in discovery was not related [to] or intertwined with" the successful claim against Burton, and the monetary judgment awarded was insignificant compared to the amounts demanded by Plaintiff in settlement negotiations and in her expert's economic loss report.  See Fee Response at 3-4, 9-12.

Although I agree Plaintiff's unsuccessful claims were factually and legally intertwined with her successful claim, see Order on Pretrial Motions, ECF No. 81, Pelzer v. City of Phila., No. 07-0038 (E.D. Pa. Sept. 24, 2010) [hereinafter Pretrial Motions Order] (claims against Johnson and the City were legally dependent upon claim against Burton, and much of Plaintiff's evidence related to both sets of claims), the jury's verdict demonstrates her overall success was limited in comparison with the "scope of the litigation as a whole."  See Hensley, 461 U.S. at 440.  At trial, Plaintiff endeavored to prove former Commissioner Johnson and the City, by failing to adequately train police officers on how to safely conduct foot pursuits and failing to adopt needed policies governing foot pursuits, were deliberately indifferent to the risk that citizens would be deprived of their Fourth Amendment rights.  See Complaint at Counts VI, V; Pelzer, 656 F. Supp. 2d at 532, 537.  On these issues, Defendants prevailed.  See Judgment. Additionally, Plaintiff sought to demonstrate Burton's use of force against her son was not only excessive, but constituted wilful misconduct and warranted an award of punitive damages.  See Complaint at Counts I-III; Pelzer, 656 F. Supp. 2d at 539.  Again, Defendant prevailed.  See Judgment.

On her successful claim against Burton, Plaintiff sought compensatory damages stemming from any pain and suffering her son experienced before he died and the loss of her son's future earning potential.  See Complaint at Counts VI-VII.  Her own economic expert

valued the latter category of compensatory damages at more than $200,000, and a coroner testified about the duration and intensity of pain a shooting victim would likely suffer. See Oct. 7, 2010 Transcript of Jury Trial at 154-74, ECF No. 123, Pelzer v. City of Phila., No. 07-0038 (E.D. Pa. Jan. 5, 2011). In the face of that evidence, the jury awarded Plaintiff only $138,000. See Judgment.

Considering all of these circumstances, and using my discretion to arrive at an equitable judgment, see Hensley, 461 U.S. at 436-37, I will reduce Plaintiff's fees by forty percent to account for her limited success.

E. Costs

Despite admitting Plaintiff is entitled to some measure of attorneys' fees as a "prevailing party" under 42 U.S.C. § 1988, Defendants assert Plaintiff is not a "prevailing party" for purposes of taxing costs. See BOC Objections at ¶ 16. I disagree. Plaintiff's success on her § 1983 claim against Burton -- undeniably a substantial claim in this case, and a claim upon which her other central claims legally depended -- renders her a "prevailing party" under Rule 54(d)(1).[5] See Institutionalized Juveniles v. Sec'y of Pub. Welfare, 758 F.2d 897, 910 (3d Cir. 1985) (a plaintiff prevailed if she "achieved 'some of the benefit sought'" in bringing the suit); see also Tyler v. O'Neill, 112 F. App'x 158, 161 (3d Cir. 2004).

Defendants next argue Plaintiff's Bill of Costs should be reduced to eliminate costs incurred in connection with her unsuccessful claims. See BOC Objections at ¶ 17. Defendants contend Plaintiff failed to provide adequate supporting documents showing which costs were

---

[5]Plaintiff is certainly the prevailing party against Burton, the only defendant against whom judgment was entered and, therefore, the only defendant from whom fees and costs may be ordered.

11

incurred in connection with which claims. See id. at ¶ 18. However, I already have ruled Plaintiff's successful claims were factually and legally interrelated with her unsuccessful claims. See Pretrial Motions Order; Section II.D., supra. Under these circumstances, it is impossible to assign specific costs to certain claims, and I will not reduce Plaintiff's costs on this basis.

I will, however, sustain Defendants' remaining objections and eliminate items not recoverable as costs under 28 U.S.C. § 1920, including: parking, lodging, meals, unspecified reimbursements, investigative services, and expert fees. See BOC Objections at ¶¶ 19-21. Although I have discretion to tax costs as appropriate, I must exercise that discretion "sparingly" when considering expenses not specifically permitted in § 1920. See Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 235(1964); Walker v. Robbins Hose Fire Co. No. 1, Inc., 622 F.2d 692, 694-95 (3d Cir. 1980).

No statute lists parking, lodging, meals, or other unspecified expenses as recoverable costs, and courts in this jurisdiction generally do not award such costs. See § 1920; Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp. 2d 538, 552 (E.D. Pa. 2003). Therefore, I will eliminate the following items from Plaintiff's Bill of Costs: $10 for "Gregg L. Zeff, Reimbursement of Expenses"; $500 for "Joel Benecke"[6]; $2,296.79 for "Hotel for Pelzer during trial"[7]; $19.50 for "UPS"; and $302.52 for all entries for parking and meals. See Bill of Costs,

---

[6]Plaintiff does not identify Joel Benecke or specify in what capacity he assisted in the preparation of her case. He was not called as a witness -- or even mentioned -- at trial. I cannot divine his identity or his role without additional information, which Plaintiff has not provided in her Bill of Costs. Accordingly, I will treat this entry as an unspecified reimbursement and eliminate it.

[7]I echo Defendants' observation that such an expense is questionable, at best, where Plaintiff is a resident of the city in which the trial was held. See Complaint at Caption, ¶ 6.

12

ECF No. 112, Pelzer v. City of Phila., No. 07-0038 (E.D. Pa. Nov. 22, 2010) [hereinafter Bill of Costs]. Similarly, copying, postage, and fax expenses are not typically awarded, as they are viewed as "subsumed within the overhead allowance included in the attorney's hourly fee." See Polcino v. City of Phila., No. 89-4672, 1991 WL 124592, at *2 (E.D. Pa. July 3, 1991); see also Sheffer, 290 F. Supp. 2d at 552. Therefore, I will eliminate Plaintiff's $500 entry for these items. See Bill of Costs.

Section 1920 does not list among taxable costs investigative services or fees paid to privately retained expert witnesses. Cf. § 1920(6) (allowing compensation for court-appointed experts). Absent extraordinary circumstances, courts generally do not tax such costs in favor of prevailing parties. See Walker 622 F.2d at 694-95 (refusal to tax expert witness fees sustained on appeal where "case was [not] of such an extraordinary nature as to justify taxing a nonstatutory item as costs"); Surgner v. Blair, No. 95-5331, 1996 WL 284993, at *5 (E.D. Pa. May 20, 1996) (disallowing expert witness fees and investigation costs in a § 1983 action); Commw. of Pa. v. O'Neill, 431 F. Supp. 700, 713 (E.D. Pa 1977) (allowing recovery of expert witness fees only "where the expert's testimony . . . played an important role in the resolution of the [case]"). Plaintiff has not demonstrated her case was extraordinary, or her experts' testimony and reports played a critical role in the jury's verdict.[8] Accordingly, I will eliminate the following entries from Plaintiff's Bill of Costs: $1,500 for "Frank D. Wallace, Investigation"; $4,000 for "Dr. Richard Callery"; $2,500 for "Dr. James Williams"; and $1,950 for "Dr. Robert

---

[8]In fact, the jury's award, which was substantially less than the amount contained in Plaintiff's economic loss report, calls into question whether the jury placed any weight on the testimony of at least two of the experts -- Dr. Wolf (whose report calculated economic loss), and Dr. Callery (who testified about pain and suffering).

P. Wolf". See Bill of Costs.

All remaining costs will be taxed as requested by Plaintiff.

III.     Conclusion

For the reasons set forth above, I will award fees for all hours expended based on the following hourly rates: $400 for Mr. Frost and Mr. Zeff, and $275 for Mr. Hartstein. Using those rates, the lodestar is $291,140. Guided by Hensley, I will reduce that award by forty percent based on the limited nature of Plaintiff's success at trial. I also will add the undisputed $2,286 sought for the work of intern Nicole Hendrix. Thus, Plaintiff is entitled to a total fee award of $176,970. In addition, costs shall be taxed in the amount of $15,580.26.

An appropriate order follows.